ID

NOT FOR PUBLICATION

```
FILED

JUL 24 2012

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
```

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA – FRESNO DIVISION

| | |
|---|---|
| In Re:<br><br>SAM LAWHON<br>KIMBERLY LAWHON<br><br>Debtors.<br>_____<br><br>KIM  ATKINS,<br><br>Plaintiff,<br><br>-v-<br><br>SAM LAWHON,<br><br>Defendant.<br>_____ | Bankruptcy Case No.  11-13337-A-7<br><br>Adv. Proc. Case No.  11-01175-A<br><br>FINDINGS OF FACT AND<br>CONCLUSIONS OF LAW |

## **INTRODUCTION**

1.      Sam Lawhon, Defendant and Debtor in the above-captioned case, filed with his wife, Kimberly Lawhon, a Voluntary Petition for Relief under Chapter 7 of the United States Bankruptcy Code on March 24, 2011.

2.      On June 30, 2011, Plaintiff Kim Atkins timely filed a Complaint to Determine Non-Dischargeability of debt, alleging claims under 11 U.S.C. §527(a)(2)(A) for fraud and §523(a)(4) for fraud by a fiduciary.

3.    On July 29, 2011, Defendant Sam Lawhon answered Plaintiff's complaint.

4.    Trial was held on July 2, 2012.  Plaintiff Kim Atkins was represented by Betts & Rubin, by James B. Betts, Esq.  Defendant Sam Lawhon was represented by Randy J. Risner, Esq.  At the close of evidence at trial, Plaintiff voluntarily dismissed her cause of action under 11 U.S.C. §523(a)(4), and the Court ordered the dismissal of that claim.

5.    At the conclusion of the trial the Court stated on the record its Conclusions and some Findings of Fact.  Additional Findings follow.

## JURISDICTION

5.    Jurisdiction exists under 28 U.S.C.§1334.  Venue is proper under 28 U.S.C.§1409(a).  The District Court for the Eastern District of California has generally referred these matters to the Bankruptcy Court for hearing pursuant to 28 U.S.C.§157(a) and United States District Court, Eastern District of California General Orders 182 and 223.  This is a core proceeding within the meaning of U.S.C.§157(b)(2)(I).  This is a complaint objecting to the dischargeability of debt under 11 U.S.C. §523(a)(2)(A).  Plaintiff Kim Atkins is a creditor of Debtor Sam Lawhon and has standing to bring this Adversary Proceeding.

## FINDINGS OF FACT

6.    Plaintiff Kim Atkins is a single mother of two children.  At all times herein relevant, Ms. Atkins served as the sole provider for her two sons.  During this time period, Ms. Atkins conservatively managed her finances, and avoided incurring any significant debt, separate and apart from her home mortgage.

7.    For the last 18 years, Ms. Atkins has been employed as an office staff worker for Bulldog Towing in Fresno.  At all times relevant to this case, Ms. Atkins made approximately $2,000.00 – $2,200.00 per month in income.

- 2 -

1      8.     From 1995 through 2007, Ms. Atkins and the Debtor cohabitated.  Early in

2  the relationship, the parties lived together in a home that Ms. Atkins rented in Fresno.

3  ////

4  Also residing within the home were Ms. Atkins two sons, and, for a significant portion of

5  each month, Debtor and his two sons.

6      9.    In 1999, Ms. Atkins purchased a home at 4320 East Austin Way,

7  Fresno, California, for \$75,000.00.  The parties and their children continued to live

8  together in the new home.  Ms. Atkins financed her purchase under a first time

9  homeowners program.  That program allowed Ms. Atkins to purchase the home with no

10  money down, but exposed her to a balloon payment.  Ms. Atkins' monthly mortgage

11  payment under her original thirty (30) year home loan was approximately \$600.00.

12     10.    In approximately 2003, Ms. Atkins followed her real estate agent's advice,

13  and refinanced the home to a lower interest rate and to pay off the balloon payment.

14  As a result of this refinance, Ms. Atkins' monthly mortgage payment under her

15  refinanced thirty (30) year home loan was under \$700.00.

16     11.    Throughout the time period that the parties cohabitated, Ms. Atkins paid

17  the rent/mortgage, monthly PG&E expenses, was the primary purchaser of the

18  household's groceries and paid for the parties' car insurance.  During this period,

19  Debtor provided Ms. Atkins with money each month to offset some of the household

20  living expenses, although that amount varied from month to month, typically ranging

21  between \$300.00 to \$700.00.

22     12.    In the Summer of 2005, Ms. Atkins explored the possibility of

23  refinancing her home to pay for an elective surgery, which was projected to cost

24  approximately \$4,000.00, and to create an emergency cash reserve of a few thousand

25  dollars  for her family.  Ms. Atkins believed that she could afford an increased monthly

26  mortgage payment of approximately \$750.00 per month (a \$50.00 increase).  In this

27  same time period, Debtor was looking to purchase a new pick-up truck.  In

28  conversations occurring in the Summer and Fall of 2005, Debtor sought to convince Ms.

1   Atkins to increase the amount of the proposed refinance in order to obtain as much

2   cash as possible. Specifically, Defendant represented to Ms. Atkins that the purchase

3   of the new pick-up truck could be achieved at a lower interest rate by utilizing refinance

4   loan proceeds, and that the couple could utilize the remaining loan proceeds to live a

5   more comfortable lifestyle. Ms. Atkins was unconvinced, as her finances were

6   insufficient to support a monthly mortgage in excess of $750.00. In response, Debtor

7   advised Ms. Atkins that: 1) as a member of the Chukchansi Tribe, he would be

8   receiving increased revenues in the future that would support a more comfortable

9   lifestyle; and 2) he would personally pay the amount of the monthly mortgage in excess

10  of $750.00 per month for the projected 15 year period of the refinanced home loan.

11  After extensive discussions on the matter, and in reliance upon Defendant's promise to

12  pay his portion of the monthly home loan, Ms. Atkins agreed, and obtained a refinanced

13  home loan for the maximum equitable value of her home.

14      13.    On September 26, 2005, Ms. Atkins refinanced her home to obtain a

15  loan in the total amount of $162,000.00, with monthly payments of $1,473.00 per

16  month. Over the ensuing two years, Ms. Atkins' monthly payments rose to $1,509.00

17  per month.

18      14.    On October 20, 2005, Ms. Atkins received net loan proceeds from the

19  refinance of her home in the amount of $59,000.00.

20      15.    On November 26, 2005, Ms. Atkins withdrew from her bank account the

21  sum of $25,405.00 to fund Debtor's purchase of a 2004, full size Chevy Silverado pick-

22  up truck. On that date same, Ms. Atkins withdrew from her bank the sum of $1,500.00

23  to cover taxes and DMV fees for the vehicle.

24      16.    In this same time period, Mr. Lawhon requested and obtained a loan from

25  Ms. Atkins in the amount of $5,000.00 to pay off certain personal debts.

26      17.    On January 5, 2006, Ms. Atkins funded an equipment purchase for

27  Debtor's truck in the amount of $1,115.00.

28      18.    Following the funding of these payments, and her own elective surgery at

1  a cost of $4,300.00, Ms. Atkins had approximately $25,000.00 of the loan proceeds

2  remaining.  In the months that followed, Ms. Atkins asked Debtor to assist in making the

3  monthly mortgage payments, as he had promised.  In response, Debtor advised Ms.

4  Atkins to utilize the remaining loan proceeds to cover the monthly mortgage payments

5  and other day-to-day living expenses.  Ms. Atkins acceded to Debtor's instruction, and

6  within two years, the remaining loan proceeds were exhausted.

7      19.    In November, 2007, the parties ended their relationship.  By that time,

8  Debtor had not made a single monthly mortgage payment, and had not made any

9  payment towards the $5,000.00 personal loan he acquired from Ms. Atkins.  At Ms.

10  Atkins request, Debtor filled out and signed a Promissory Note under which he

11  acknowledged his obligation to pay $800.00 per month for the duration of Ms. Atkins

12  fifteen (15) year home loan.  Specifically, Defendant completed a section of the

13  Promissory Note under which he acknowledged that the term of the agreement was for

14  "12Y 10M"; meaning twelve (12) years and ten (10) months.

15      20.    After paying this sum for approximately two years, Debtor discontinued his

16  payments, claiming that the promised payments were only intended to cover the cost of

17  the new truck and the $5,000.00 personal loan, totaling $29,000.00.  At the time

18  Debtor ceased making payments, he asserted that he had never agreed to provide

19  monthly mortgage payments for the life of the home loan, but had only intended to

20  reimburse Ms. Atkins the principal sum of $29,000.00.  Specifically, Debtor terminated

21  his monthly payments in December, 2009, asserting that ". . . I told you I would pay for

22  the truck and the $5,000.00.  I have done that and more." (Exhibit E, p.3).  Moreover,

23  at that time Debtor also claimed that Ms. Atkins had defrauded him by inserting into the

24  Promissory Note " . . . the length of the term after I signed it . . ." (Exhibit E, p.3).

25      21.    Debtor repeated these assertions in his Initial Disclosures served in this

26  action pursuant to Rule 26(a) of the Federal Rules of Civil Procedure, and stated:

27      "Plaintiff asked Defendant to sign the promissory note and to
        promise to repay Plaintiff for his pick-up and the additional
28      $5,000.00 loan to him.  Plaintiff made these payments.

-5-                     Findings of Fact and Conclusions of Law

1            However, after Defendant thought he made the last
2            payment, he received a copy of the promissory note showing
           an amount in excess of $200,000.00.  Plaintiff demanded
           that Defendant in essence pay her entire mortgage.  This
3            was not what Defendant agreed to do."

4       22.      At trial, the Court received the testimony of forensic document examiner,

5 James Tarver, who testified that his review of the Promissory Note revealed numerous

6 indications that the term "12Y 10M" was written by the Debtor, and could find no

7 indications to suggest that there was any other author of this entry.

8       23.      At trial, the Court received the testimony of certified public accountant,

9 Marshall Scott, who testified to the nature and scope of Ms. Atkins' past and future

10 damages, which he quantified at $91,452.88.

11

12                               **CONCLUSIONS OF LAW**

13       24.      This adversary proceeding is brought pursuant to 11 U.S.C. §523(a)(2)(A).

14 That section provides that:

15            " . . . a discharge under Section 727, . . . does not discharge
           an individual debtor from any debt . . . 2) for money,
16            property, services or an extension, renewal, or refinancing of
           credit to the extent obtained by, . . . (a) false pretenses, false
17            representation, or actual fraud, other than a statement
           respecting the debtor's or an insider's financial condition."
18

19       25.      To prove a debt nondischargeable pursuant to 11 U.S.C. §523(a)(2)(A),

20 a creditor must prove each of the following elements:

21            a.      The debtor made the representation;

22            b.      That at the time the representation was made, the debtor knew it

23                  was false;

24            c.      That the debtor made the misrepresentation with the intent and

25                  purpose of deceiving the creditor;

26            d.      That the creditor justifiably relied on the representation; and

27            e.      The damages sustained as a result of the misrepresentations were

28                  proximately caused by the debtor's conduct.

1    See In re Slyman (9th Cir. 2000) 234 F.3d 1081, 1085; In re Kirsh (9th Cir. 1992)

2    973 F.2d1454, 1456-78; In re Sabban (9th Cir. 1992) 600 F.3d 1219, 1222; In re Britton

3    (9th Cir. 1991) 950 F.2d 602, 604.

4    26.    The burden of proof in nondischargeability cases is by a preponderance

5    of evidence, Grogan v Garner (1991) 498 U.S. 279, 289, 111 S. Ct. 654, 651.  The

6    definition of a preponderance of evidence is evidence which is of greater weight or

7    more convincing than the evidence which is offered in opposition to it; that is, evidence

8    which as a whole shows that the fact sought to be proved is more probable than not.

9

10    **DISCUSSION**

11    27.    In the Summer and Fall of 2005, Debtor made representations to

12    Plaintiff to induce her to obtain a refinanced home loan that she could not afford by

13    promising her that he would pay the monthly mortgage payment in excess of $750.00,

14    for the life of the loan.

15    28.    At the time that Debtor made these representations, he knew them to be

16    false.  Specifically, between September, 2005 and November, 2007, Debtor did not

17    make a single contribution towards the monthly mortgage payments.  Rather, Debtor

18    continuously instructed Ms. Atkins to utilize the remaining loan proceeds to cover his

19    portion of the monthly mortgage payments. Thereafter, when the couple parted ways,

20    Debtor acknowledged his obligation to make the monthly mortgage payments for the

21    remaining portion of the home loan, and filled out the Promissory Note with the term

22    "12Y 10M", to affirm the term during which he was to make payments.  Approximately

23    two years later, Debtor falsely denied that he had written this term in the Promissory

24    Note, claiming instead that he had been defrauded when Plaintiff added this term after

25    he signed the Note.  On this issue, the Court credits the testimony of Ms. Atkins and

26    Plaintiff's forensic document examiner, James Tarver, who presented persuasive

27    evidence that Mr. Lawhon was the author of this term of the Promissory Note.  Thus,

28    Debtor's assertion that Ms. Atkins had defrauded him by writing this term into the Note

1    was knowingly and materially false.

2    ////

3    ////

4        29.     Similarly, Debtor's testimony that he only agreed to pay Ms. Atkins for the

5    truck and the personal loan, and that he repaid those sums by December, 2009, was

6    also knowingly and materially false.  Specifically, under Debtor's version of events, he

7    acknowledged a debt owing to Plaintiff in November, 2007, in the amount of

8    $29,000.00, for which he made 24 payments of $800.00.  Even if Debtor's version of

9    events were credited, his payments fall far short of satisfying his acknowledged debt.

10    Under these facts, Debtor's false representations, and failure to make a single payment

11    on the refinanced loan from September 2005 to November 2007, raises a reasonable

12    inference that his original representations to Plaintiff (i.e.,that he would make monthly

13    mortgage payments for the life of the home loan) were intentionally false when made.

14        30.     The misrepresentations made by the Debtor to Plaintiff were made with

15    the intent and purpose of deceiving Ms. Atkins.  Specifically, before the 2005 refinance

16    loan was obtained, Debtor sought to persuade, and did persuade, Ms. Atkins that he

17    would contribute to the monthly mortgage payments.  These misrepresentations were

18    made in order for Debtor to obtain from Ms. Atkins sufficient loan proceeds to purchase

19    his pick-up truck and to pay his personal debts and expenses.  Thus, Debtor's false

20    promise to pay the monthly mortgage payments was made with the intent to induce Ms.

21    Atkins to obtain a home loan she did not want and could not afford.

22        31.     The parties agree that their relationship was one of trust and confidence,

23    and the Court finds that under the totality of the circumstances presented, Ms. Atkins

24    was justified in relying upon Debtor's representations that he would make the subject

25    loan payments.

26        32.     Damages are awarded consistent with the expert testimony of certified

27    public accountant Marshall Scott, who testified to the following:

28    ////

1  |  ////

2  |  ////

| | a. | Loss of monthly payments from<br>January, 2010 through July, 2013 | $24,000.00 |
| | b. | Loss of future monthly payments<br>through September, 2020 | $63,269.41 |
| | c. | Loan fees and costs required to<br>refinance the 2005 loan | $ 3,388.47 |
| | | TOTAL | $91,452.88 |

33.    In light of the fact that the parties' Promissory Note includes a provision for recovery of " . . . all costs of collection and enforcement, including reasonable attorney's fees and Court costs . . .,"  Plaintiff is awarded her costs of collection in an amount to be fixed by this Court.

34.    The Court requested that the Plaintiff file its application for fees and costs. The Defendant was given additional time to respond. Having reviewed the declaration and application of Plaintiff, the Court awards Plaintiff fees in the sum of $37,648 and costs in the sum of $4,956.75 for a total of $42,604.75.

Dated: July 2 4, 2012

Hon. Richard T. Ford, Judge
United States Bankruptcy Court

Findings of Fact and Conclusions of Law

Service list for 11-1175:

James B. Betts, Esq.
Brady K. McGuinness, Esq.
BETTS & RUBIN
907 Santa Fe Avenue, Suite 201
Fresno, California 93729-8550

Randy J. Risner, Esq.
1100 W. Shaw Avenue, Suite 140
Fresno, California 93711

Trudi Manfredo
Chapter 7 Trustee
545 E. Alluvial, #112
Fresno, California 93720